

FILED AUG 24 2012
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [illegible] DEPUTY

ORIGINAL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 12CR3481-BEN |
| Plaintiff, | |
| v. | **INFORMATION** |
| FLOYD LANDIS, | Title 18, U.S.C., Sec. 1343 – Wire Fraud |
| Defendant. | |

The United States Attorney charges, at all times relevant to this Information:

### INTRODUCTORY ALLEGATIONS

1. Defendant FLOYD LANDIS ("LANDIS") was a professional cyclist from 1999 to 2011. LANDIS raced both in the United States and abroad, including in the Tour de France (the "Tour") from 2002 to 2006. He raced on the United States Postal Service team from 2002 to 2005 and on the Phonak team from 2005 to 2006. LANDIS was one of the top American cyclists of his era. He won several major races, including the 2006 Tour.

2. LANDIS's victory in the 2006 Tour was vacated when France's National Laboratory for Doping Detection ("LNDD") found that his urine "A" sample (taken after Stage 17 - St. Jean de Maurienne to Morzine)

tested positive for the presence of exogenous (not naturally produced) testosterone. This adverse analytical finding was triggered because LANDIS's test sample contained an unusually high ratio of the hormone testosterone to the hormone epitestosterone (*i.e.*, a T/E ratio of approximately 11:1).

3. LANDIS denied the use of exogenous testosterone and the International Cycling Union ("UCI") subsequently tested his "B" sample. Pursuant to UCI protocol, the "B" sample was also tested at LNDD for the presence of exogenous testosterone, but by a different laboratory analyst. The results of this test were also positive for the presence of testosterone, which was not produced naturally by his own body.

4. Based upon the "B" sample test results, LANDIS was disqualified from the 2006 Tour and stripped of his title. UCI protocol, however, mandated that the final decision as to whether LANDIS used a performance enhancing drug ("PED") fell within the jurisdiction of USA Cycling, the national cycling federation. USA Cycling, in turn, deferred the decision to the United States Anti-Doping Agency ("USADA"), the national anti-doping organization for Olympic-related sports in the United States.

5. After an initial attempt to have USADA's review board dismiss the charges failed, LANDIS engaged in a lengthy legal battle with USADA. On September 20, 2007, an American Arbitration Association panel upheld USADA's finding that LANDIS had, in fact, tested positive for testosterone. This result led to Landis being officially banned from the sport for two years.

6. LANDIS appealed the finding of the arbitration panel to the Court of Arbitration for Sport ("CAS"). On June 20, 2008, the Court denied LANDIS's appeal. In September 2008, LANDIS moved in federal District Court to vacate CAS's decision. This case was withdrawn by the parties with prejudice in December 2008.

7. In litigating the propriety of his 2006 positive test result, LANDIS spent over $2 million. These funds were derived from a variety of sources, including the Floyd Fairness Fund ("FFF"), which was established in 2007 to, among other things, "support Floyd Landis against unsubstantiated doping allegations."

8. In 2007 and 2008, LANDIS LANDIS and the FFF raised $478,354 from 1,765 donors. These funds – as well as additional donations – were raised though town hall-style meetings, online videos, charity rides, a book, and personal appeals. Although the purpose of the FFF was multifaceted, LANDIS's appeal to donors was based, in large part, on his consistent denial of having used PEDs during his professional cycling career.

9. For example, in his 2007 book, *Positively False: The Real Story of How I Won the Tour de France*, LANDIS falsely claimed: "I did not use PEDs in the 2006 Tour de France or any other time in my career." LANDIS repeated this false claim in a wide variety of venues following the 2006 Tour and throughout 2007, 2008 and early 2009 (including the time he was soliciting donations for the FFF).

10. In truth, LANDIS's denials related to his use of PEDs were false. As LANDIS himself admitted in May 2010, he used numerous PEDs – including several forms of testosterone, human growth hormone, insulin, and erythropoietin (commonly referred to as "EPO") –

3

throughout his professional career. Although LANDIS maintained that he did not use exogenous testosterone immediately prior to Stage 17 of the 2006 Tour, he admitted to having used PEDs while with the United States Postal Service and Phonak cycling teams, and engaging in "blood doping" - a process in which an athlete receives transfusions (typically of their own blood) to replenish red blood cells during competition.

11. LANDIS made the false statements and representations about never having used PEDs knowing that they had the potential to deceive FFF donors. At the time, LANDIS recognized that the FFF donations were being made, in part, based upon his statements that he had never used PEDs. As LANDIS stated (in an October 2010 interview with ESPN), "I am acutely aware that . . . I lied to trusting people [who donated money to the FFF]."

## COUNT 1

### (Wire Fraud - 18 U.S.C. § 1343)

12. The introductory allegations contained in paragraphs 1 through 11 are hereby re-alleged and incorporated by reference herein.

13. Beginning at a time unknown to the United States and continuing up to and including May 20, 2010, within the Southern District of California and elsewhere, defendant FLOYD LANDIS knowingly devised and intended to devise, with the intent to defraud, a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and by intentional concealment and omission of material facts.

14. On or about May 5, 2007, within the Southern District of California and elsewhere, defendant FLOYD LANDIS, for the purpose of executing such scheme and artifice to defraud, caused to be transmitted by means of interstate wire communication from San Diego, CA to New York, NY, certain signs, signals, and sounds - that is, a donation to the FFF.

All in violation of Title 18, United States Code, Section 1343.

DATED: August 24, 2012.

LAURA E. DUFFY
United States Attorney

PHILLIP L.B. HALPERN
Assistant U.S. Attorney

PETER J. MAZZA
Assistant U.S. Attorney